Sandra Slaton, Esq. SBA# 006454
**SLATON ROEBUCK, PLLC**
8501 North Scottsdale Road, Suite 155
Scottsdale, AZ 85253
Tel: (480) 483-2178
Fax: (480) 367-0691
slaton@slatonroebuck.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Louise Hurd, as personal representative of the estate of Benjamin Nathaniel Austin and in her individual capacity as surviving mother of Deceased<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a municipality; Jason Hamernick (#8183) and Jane Doe Hamernick, husband and wife; Carmina Theriault (#8909) and John Doe Theriault, wife and husband; David Murphy (#6867) and Jane Doe Murphy, husband and wife; Daniel Quillman (#7432) and Jane Doe Quillman, husband and wife; Jason Scoggins (#9477) and Jane Doe Scoggins, husband and wife; John Doe Helmkamp (#9737) and Jane Doe Helmkamp, husband and wife; Devan Fischer (#10454) and Jane Doe Fisher, husband and wife; Kenneth Osbon (#10842) and Jane Doe Osbon, husband and wife; Gerardo Encinas (#9700) and Jane Doe Encinas, Husband and Wife; John Doe Tennyson (#7151) and Jane Doe Tennyson, husband and wife; Benjamin Carro (#9038) and Jane Doe Carro, husband and wife; Randall Farris (#7341) and Jane Doe Farris, husband and wife; | Case No.:<br><br>**VERIFIED COMPLAINT**<br><br>**(**Civil Rights Violation, pursuant to 42 U.S.C. § 1983)<br><br>**(Jury Trial Requested)** |

John Buchanan (#9844) and Jane Doe Buchanan, husband and wife; John and Jane Does 1-10; and XYZ Entities 1-10

Defendants.

Plaintiff, Mary Louise Hurd, by and through her undersigned counsel, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to U.S.C. § 1331 because the claims asserted herein arise under 42 U.S.C. § 1983.

2. Venue is proper in this this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because all the allegations giving rise to the claims asserted herein occurred in Maricopa County, Arizona.

## PARTIES

3. Plaintiff, Mary Louise Hurd, resides in Maricopa County, Arizona, and is the surviving mother and presumptive personal representative of the estate of the decedent, Benjamin Nathaniel Austin.[1]

4. Benjamin Nathaniel Austin ("Decedent"), resided in and, on November 30, 2023, was pronounced deceased in Maricopa County, Arizona. Prior to his death, Decedent resided in a converted apartment at the home of his uncle, Emmit Hurd. Plaintiff also

---

[1] A Petition for Formal Probate and Appointment of Personal Representative is presently pending in the Maricopa County Superior Court, Case No. PB2025-009338.

2

resided at the home of Emmit Hurd as well.

5.      Defendant City of Phoenix is a municipality in the State of Arizona, and operates its subdivision, the Phoenix Police Department, headquartered at 620 W. Washington St., Phoenix, AZ 85003

6.      Upon information and belief, Defendant Jason Hamernick (#8183) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Hamernick was a Phoenix Police Department detective with the Violent Crimes Bureau. The acts of Defendant Hamernick alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Hamernick.

7.      Upon information and belief, Defendant Carmina Theriault (#8909) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Theriault was a Phoenix Police Department sergeant covering the 41X Neighborhood Enforcement Team. The acts of Defendant Theriault alleged herein were for the benefit of the marital community consisting of herself and her husband, Defendant John Doe Theriault.

8.      Upon information and belief, Defendant David Murphy (#6867) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Murphy was a Phoenix Police Department officer and member of the 41X Neighborhood Enforcement Team. The acts of Defendant Murphy alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Murphy.

9.      Upon information and belief, Defendant Daniel Quillman (#7432) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Quillman was a Phoenix Police Department officer and member of the 41X Neighborhood Enforcement

Team. The acts of Defendant Quillman alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Quillman.

10.    Upon information and belief, Defendant Jason Scoggins (#9477) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Scoggins was a Phoenix Police Department officer and member of the 41X Neighborhood Enforcement Team. The acts of Defendant Scoggins alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Scoggins.

11.    Upon information and belief, Defendant John Doe Helmkamp (#9737) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Helmkamp was a Phoenix Police Department Officer. The acts of Defendant Helmkamp alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Helmkamp.

12.    Upon information and belief, Defendant Devan Fischer (#10454) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Helmkamp was a Phoenix Police Department officer and a member of the South Mountain Precinct Crime Suppression Team. The acts of Defendant Fischer alleged herein were for the benefit of himself and his wife, Defendant Jane Doe Fischer.

13.    Upon information and belief, Defendant Kenneth Osbon (#10842) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Osbon was a Phoenix Police Department officer and a member of the South Mountain Precinct Community Action Squad. The acts of Defendant Osbon alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Osbon.

4

14. Upon information and belief, Defendant Gerardo Encinas (#9700) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Encinas was a Phoenix Police Department officer and member of the 41X enforcement team. The acts of Defendant Encinas alleged herein were for the benefit of the martial community consisting of himself and his wife, Defendant Jane Doe Encinas.

15. Upon information and belief, Defendant John Doe Tennyson (#7151) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Tennyson was a Phoenix Police Department detective with the Violent Crimes Bureau. The acts of Defendant Tennyson alleged herein were for the benefit of himself and the marital community consisting of himself and his wife, Defendant Jane Doe Tennyson.

16. Upon information and belief, Defendant Benjamin Carro (#9038) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Carro was a Phoenix Police Department detective with the Violent Crimes Bureau. The acts of Defendant Carro alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Carro.

17. Upon information and belief, Defendant Randall Farris (#7341) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Farris was a Phoenix Police Department detective with the Violent Crimes Bureau. The acts of Defendant Farris alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Farris.

18. Upon information and belief, Defendant John Buchanan (#9844) is a resident of Maricopa County, Arizona. At all material times herein, Defendant Buchanan was a

Phoenix Police Department detective with the Violent Crimes Bureau. The acts of Defendant Buchanan alleged herein were for the benefit of the marital community consisting of himself and his wife, Defendant Jane Doe Buchanan.

19.    At all times material herein, Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, Encinas, Tennyson, Carro, Farris, and Buchanan acted under the color of law and within the course and scope of their employment with Defendant City of Phoenix and are sued in their individual capacities.

20.    The Defendant John and Jane Doe spouses of Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, Encinas, Tennyson, Carro, Farris, and Buchanan are named only for the purpose of community liability. Plaintiff will amend her complaint either as a matter of course or with leave of court when their true names become known.

21.    Defendants John and Jane Does 1-10 are officers, employees, agents, servants, and/or representatives of Defendant City of Phoenix, whose identities were not known prior to filing this Complaint, and who have committed wrongful acts and are either joint or concurrent malfeasors with the specifically named Defendants, and who acting in both their individual and/or official capacities are, therefore, also jointly and severally liable for such acts or omissions.

22.    XYZ Entities 1-10, are fictitious named Defendants who are officers, employees, servants, representatives, principals, subsidiaries, and/or affiliates or one or more named Defendants, and who have committed wrongful acts are either joint or concurrent malfeasors with the specifically named Defendants, and who acting in both their individual

6

and/or official capacities are, therefore, also jointly and severally liable for such acts or omissions. Plaintiff will amend her complaint wither as a matter of course of with leave of the court when their true names become known.

## GENERAL ALLEGATIONS

23.    On October 2, 2023, at approximately 8:53 p.m., two Phoenix Police officers responded to a call from Kelly Ponce ("Complainant"). Complainant accused Decedent of forcing her to walk to his apartment with a knife pressed against her back and spend the night as his apartment the prior evening, October 1, 2023.

24.    Complainant reported that she did not see an actual knife but simply felt a pointy object against her back. Complainant further accused Decedent of assaulting her by repeatedly slapping and hitting her in the face. Although the two responding Phoenix Police Officers did not observe any physical injuries, Complainant requested Phoenix Fire Department respond to the scene to treat her injuries. Phoenix Fire Department Responded and cleared Complainant, who ultimately declined being transported to the hospital.

25.    On October 24, 26, and 31, 2023, Defendant Hamernick called Complainant for a statement. Complainant did not answer any of Defendant Hamernick's calls nor returned his voicemails. Because of Complainant's lack of contact, on November 3, 2023, Defendant Hamernick drove to Complainant's residence to speak with her about her allegations against Decedent.

26.    During Complainant's November 3, 2023, interview with Defendant Hamernick, she contradicted many of her original October 2, 2023, statements.

7

27.    Complainant stated she agreed to follow Decedent to his home and no incident occurred on the way. Complainant further stated that upon arriving at Decedent's home, she first met and spoke with Plaintiff before proceeding to Decedent's apartment. Moreover, the lack of observed physical injuries and being cleared by the Phoenix Fire Department on October 2, 2023, notwithstanding, Complainant further claimed that Decedent punched her on the forehead several times and struck her in the jaw, neck, and shoulder area with a hammer.

28.    On November 21, 2023, Defendant Hamernick returned to Complainant's residence for a photo lineup. Complainant's positive identification of Decedent notwithstanding, she continued to contradict her own October 2, 2023, statements.

29.    Defendant Hamernick asked why Complainant said there were no incidents on the way to Decedent's apartment, even though she originally alleged that Decedent forced Complainant with a knife to her back. Complainant stated that everything was fine until they arrived at Decedent's apartment and the knife did not come out until that point.

30.    Defendant Hamernick further asked why Complainant alleged Decedent forced her to his apartment with a knife. Complainant stated that Decedent did not pull out a knife until they were halfway to Decedent's apartment and only assumed so because she could feel something sharp against her back.

31.    Complainant's lack of follow-up and contradictions notwithstanding, on November 28, 2023, Defendant Hamernick contacted members of the 41X Neighborhood Enforcement Team, stating there was probable cause to arrest Decedent for kidnapping and aggravated assault.

8

32.    On November 29, 2023, Defendant Scoggins informed Defendant Theriault of Defendant Hamernick's determination of probable cause. Thereafter, Defendants Theriault, Scoggins, and Murphy developed a plan, with assistance from Decedent's probation officer, to arrest Decedent outside of his home at approximately 1:00 p.m. and execute a search warrant on the property thereafter.[2]

33.    While the plan was being finalized, Defendants Theriault and Murphy drove to Decedent's neighborhood in an unmarked vehicle to scout the property to plan the execution of the anticipated search warrant. As Defendants Theriault and Murphy drove through the alley to photograph the rear of the property, Decedent emerged from his apartment, walked toward the chain-link fence in the backyard and made contact with Defendant Theriault while Defendant Murphy remained hidden from view.

34.    Defendant Theriault claimed to be a City of Phoenix Neighborhood Services Department employee following up on a complaint regarding trash and transient issues in the alley and convinced Decedent and his uncle to meet her at the front of the property under the guise of discussing setting up fencing in the alley to deter crime. Meanwhile, Defendant Murphy requested Defendants Scoggins, Helmkamp, Osbon, Fischer, Quillman, and Encinas respond to the property to assist with the arrest.

35.    As Defendants Theriault and Murphy drove to the front of the property, Defendants Scoggins and Helmkamp advised over radio that they were positioned on the North and South of the property. Defendant Scoggins then advised that Decedent was standing on the

---

[2] At the time of his arrest, Decedent was on supervised probation for aggravated assault.

sidewalk outside the property waiting for Defendant Theriault.

36.    At approximately 11:55 a.m., Defendants Theriault and Murphy reached the front of the property. Defendant Theriault, now wearing her police vest, exited the vehicle to make contact with Decedent. Defendant Murphy followed closely behind, approached Decedent from the rear, and placed him under arrest as Defendants Scoggins and Helmkamp made their way to the front of the property. Defendants Theriault and Scoggins explained to Decedent why he was being arrested and Defendant Murphy conducted a search incident to arrest. Upon information and belief, Decedent did not have any drugs or drug paraphernalia on his person.

37.    At approximately 11:56 a.m., so Defendants Theriault, Murphy, Scoggins, and Helmkamp could stay and execute the anticipated search warrant, Defendants Osbon and Fisher arrived and assumed custody of Decedent to transport him to Phoenix Police Department Headquarters to be interviewed by Defendant Hamernick.

38.    While en route to Phoenix Police Department Headquarters, Defendants Osbon and Fischer realized Defendant Encinas was not certified to execute the anticipated search warrant on Mr. Hurd's property. As a result, at approximately 12:04 p.m., Defendants Osbon and Fischer transferred custody of Decedent to Defendants Quillman and Encinas so they could return to the property and assist executing the anticipated search warrant.

39.    At approximately 12:17 p.m., Decedent, Defendant Quillman, and Defendant Encinas arrived at Phoenix Police Department Headquarters. Defendants Quillman and Encinas escorted Decedent to Interview Room #1 ("Interview Room") and handcuffed Decedent to the table. Defendant Quillman also double-checked Decedent's pockets, hat,

10

and beanie to ensure nothing was hidden on his person. Upon information and belief, Decedent did not have any drugs or drug paraphernalia on his person.

40.    At approximately 12:26 p.m., Defendant Quillman informed Defendant Hamernick that Decedent was in the Interview Room for questioning. Rather than proceed to the interview room, Defendant Hamernick chose to wait and see if the search warrant produced any evidence and began recording and monitoring Decedent via a surveillance camera. At some point, Defendant Hamernick believed Decedent was snoring and sleeping. At approximately 12:35 p.m., Decedent is seen the Interview Room surveillance video slumping over to his left side.

41.    At approximately 1:05 p.m., Defendant Hamernick entered the Interview Room and attempted to wake Decedent. Once it became clear Decedent was unresponsive rather than merely sleeping, Defendant Hamernick shouted for someone to call the Phoenix Fire Department and began CPR. Until Phoenix Fire Department arrived at approximately 1:12 p.m. to assume care, Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan alternated chest compressions, and Defendants Carro and Buchanan each administered doses of Narcan.

42.    At approximately 1:12 p.m., Phoenix Fire Department arrived at the Interview Room and assumed care of Decedent.

43.    At approximately 1:32 p.m., Decedent arrived at Banner University Medical Center not breathing and with a very low pulse and required intubation.

44.    On November 30, 2025, Decedent's condition had not improved and was eventually extubated. Decedent passed away on November 30, 2025 at approximately 6:53 p.m..

11

45. Plaintiff, in her capacity as personal representative of Decedent's estate, brings her claim against Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, and Encinas for violating Decedent's right to be free from unreasonable search and seizure under the Fourth Amendment, as incorporated through the Fourteenth Amendment.

46. Plaintiff in her capacity as personal representative of Decedent's estate brings her claim against Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan for violating Decedent's right to adequate medical care under the Fourteenth Amendment.

47. Plaintiff, in her individual capacity as surviving mother of Decedent brings her claim against Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan for violating her right to Decedent's companionship under the Fourteenth Amendment.

48. Plaintiff, in her capacity as personal representative of Decedent's estate and individual capacity as surviving mother of Decedent, brings her claims against Defendant City of Phoenix as *Monell* claims, including ratification of a promulgated policy, pattern of practice, or established custom that led to the deprivation of Decedent and Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

49. Upon information and belief, Defendant City of Phoenix had a policy, pattern of practice, or established custom on November 29, 2023 regarding effecting seizures without probable cause and delaying adequate medical care to pretrial detainees in its custody.

50. Defendant City of Phoenix's ratification of Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, Encinas, Tennyson, Carro, Farris, and Buchanan's actions, and its policies, orders, and customs, along with the

inadequate training of its police officers, amounts to deliberate indifference to Decedent and Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments, and was the driving force behind the deprivation thereof.

51. In addition to compensatory damages, Plaintiff is seeking punitive damages from the individual defendants and Defendant City of Phoenix. Punitive damages are meant to serve as a deterrent for future misconduct and to hold the parties responsible accountable for their actions. It is crucial for Defendant City of Phoenix to take responsibility and address the failings of their policies to prevent similar incidents from occurring again.

## COUNT I

**(Violation of Civil Rights 42 U.S.C. § 1983)**
**(Decedent's Right to be Free from Unreasonable Search and Seizure)**
**(Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, and Encinas)**

52. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53. Plaintiff brings this claim in her capacity as personal representative of Decedent's estate pursuant to Arizona's survival statute, A.R.S. § 14-3110, to vindicate Decedent's right under the Fourth Amendment.

54. Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fisher, Osbon, and Encinas violated Decedent's Fourth Amendment right to be free from unreasonable seizures.

55. The Fourth Amendment guarantees that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

56.    Phoenix Police Department Incident Reports regarding the alleged kidnapping and aggravated assault, and Decedent's death do not reflect that an arrest warrant for Decedent was issued.

57.    "It is well established that an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under [42 U.S.C.] § 1983." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (internal quotation marks and citations omitted).

58.    Probable cause exists "when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that a suspect had committed a crime." *Id*. (citation omitted).

59.    Defendant Hamernick's determination that probable cause to arrest Decedent for kidnapping and probable cause was unreasonable. A reasonably detective would not believe Decedent committed the offenses of kidnaping and aggravated assault given Complainant's lack of physical injuries, her failure to return multiple follow-up calls, and contradictions in her subsequent statements.

60.    Defendants Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, and Encina's reliance on Defendant Hamernick's bare assertion that probable cause to arrest Decedent for kidnaping and aggravated assault existed was also unreasonable.

61.    Decedent did not commit the alleged crimes for which he was arrested in the

presence of Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, or Encinas to support a probable cause determination. *See D.C. v. Wesby*, 583 U.S. 48, 56 (2018).

62.    Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, and Encinas are liable both personally and professionally for violating Decedent's Fourth Amendment rights in violation of 42 U.S.C. § 1983.

63.    Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, and Encinas' actions directly and proximately caused injury to Decedent's Fourth Amendment Rights.

64.    Plaintiff reserves the right to allege additional facts as a basis for Count I

## COUNT II

**(Violation of Civil Rights 42 U.S.C. § 1983)**
**(Decedent's Right to Be Free from Unreasonable Search and Seizure)**
**(Defendant City of Phoenix)**

65.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

66.    Municipal bodies are liable for constitutional violations pursuant to 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of their rights under the Constitution. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 700 (1978).

67.    Upon information and belief, at all relevant times hereto, Defendant City of Phoenix had a policy or established custom in place regarding effecting warrantless arrests in

15

situations such as the one involving Decedent.

68.     On June 13, 2024, the United States Department of Justice ("DOJ") released a report of its findings pursuant to is pattern or practice investigation of the Phoenix Police Department, which commenced on August 5, 2021.[3]

69.     The DOJ found that the Phoenix Police Department detains, cites, and arrests homeless people in violation of the Fourth Amendment.[4]

70.     The DOJ also found that the Phoenix Police Department arrested more than 120 people for the crime of felony rioting during a protest in May 2020, using the same probable cause statement to justify each arrest. A day later, a judge determined that the identical statements were insufficient to support felony rioting charges and ordered the protestors to be released.[5]

71.     Defendant City of Phoenix's policy or custom resulted in the deprivation of Decedent's constitutional rights as occurred in this case: the right to be free from unreasonable search and seizure.

72.     Defendant City of Phoenix was deliberately indifferent to the known or obvious consequences caused by its inadequate policy or customs, and its failure to remedy the same was the driving force behind bringing about injury to Decedent's Fourth Amendment right to be free from unreasonable searches and seizures.

---

[3] UNITED STATES DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION, INVESTIGATION OF THE CITY OF PHOENIX AND THE PHOENIX POLICE DEPARTMENT, pp. 1, 4 (2024).

[4] *Id.* at p. 44.

[5] *Id.* at p. 76, ABC 15 Arizona, *Phoenix police arrests dozens with copy-and-paste evidence*, YouTube (June 1, 2020), https://www.youtube.com/watch?v=WYGkSuNMjvA

73. Defendant City of Phoenix's policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly ratified by its failure to train and supervise Defendants Hamernick, Theriault, Murphy, Quillman, Scoggins, Helmkamp, Fischer, Osbon, and Encinas and amounted to deliberate indifference towards Decedent's right to be free from unreasonable search and seizure.

74. Defendant City of Phoenix's ratified policy, pattern of practice, or established custom was the driving force behind the violation of Decedent's Fourth Amendment right to be free from unreasonable search and seizure.

75. As a direct and proximate cause of the Defendant City of Phoenix's deliberate indifference, Decedent was damaged in an amount to be proved at trial.

76. Plaintiff reserves the right to allege additional facts as a basis for Count II

### COUNT III

**(Violation of Civil Rights 42 U.S.C. § 1983)**
**(Decedent's Right to Adequate Medical Care)**
**(Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan)**

77. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78. Plaintiff brings this claim in her capacity as personal representative of Decedent's estate pursuant to Arizona's survival statute, A.R.S. § 14-3110, to vindicate Decedent's constitutional right under the Fourteenth Amendment.

79. Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan violated Decedent's right to adequate medical care.

80. The Fourteenth Amendment guarantees a pretrial detainee the right to adequate medical care. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

81. Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan delay in providing Decedent with adequate medical care was objectively deliberately indifferent.

82. The Critical Incident Briefing video released by the Phoenix Police Department shows that Decedent was in visible medical distress for the entire 39 minutes he was alone in the Interview Room being monitored by Defendant Hamernick.

83. Decedent is seen struggling to maintain consciousness, breathing heavily, slumping back in his chair, forcefully hitting his head on the wall, and then sliding down in his chair.

84. The Medical Examiner was provided with the Interview Room footage and is summarized in his report. After Decedent slides down in his chair, his breathing becomes noticeably slower over the next eighteen minutes. Eventually, there was a thirty second gap between breaths, followed by a series of rapid breaths, two and one-half minutes before his last visible breath.

85. Despite these clear signs of medical distress, Defendant Hamernick did not enter the Interview Room for approximately twelve minutes after Decedent's last breath.

86. Plaintiff asserts that Defendant Hamernick monitoring Decedent alone in the Interview Room for 39 minutes despite showing clear signs of medical distress constitutes deliberate indifference towards Decedent's right to adequate medical care.

87. Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan are liable both personally and professionally for violating Decedent's Fourteenth Amendment right pursuant to U.S.C. § 1983.

88.    Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan actions directly and proximately caused injury to Plaintiffs' Fourteenth Amendment Rights.

89.    Plaintiff reserves the right to allege additional facts as a basis for Count III

## COUNT IV

**(Violation of Civil Rights 42 U.S.C. § 1983)**
**(Decedent's Right to Adequate Medical Care)**
**(Defendant City of Phoenix)**

90.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

91.    Municipal bodies are liable for constitutional violations pursuant to 42 U.S.C. § 1983 when execution of its official policy, widespread practice or custom deprives an individual of their rights under the Constitution. *Monell v. Dept' of Soc. Services of City of New York*, 436 U.S. 658, 700 (1978)

92.    Upon information and belief, at all relevant times hereto, Defendant City of Phoenix had a policy or widespread practice or custom in place depriving individuals of adequate medical care.

93.    On November 17, 2021, Defendant City of Phoenix entered into a $5 million settlement with the family of Muhammad Muhaymin arising from his 2017 in-custody death caused by Phoenix Police officers who pinned Mr. Muhaymin to the ground by his head and neck and ignored Mr. Muhaymin's statements that he could not breath.[6]

---

[6] Melissa Blasius, *$5 million settlement in deadly Phoenix police brutality case of Muhammad Muhaymin*, (Nov. 17, 2021), https://www.abc15.com/news/region-phoenix-metro/central-phoenix/5-million-settlement-in-deadly-phoenix-police-brutality-case-of-

94.     On August 2, 2020, Ramon Anthony Lopez told Phoenix Police Department officers "you guys are killing me" as he was pinned to the hot mid-day pavement for six minutes as officers placed Mr. Lopez in handcuffs and leg restraints. Mr. Lopez was then shoved face down into a police cruiser. After noticing Mr. Lopez was unresponsive, officer tried to revive him by merely pouring water onto his body. Mr. Lopez was later pronounced dead at the hospital.[7]

95.     According to the Arizona Criminal Justice Commission, the Phoenix Police Department reported a total of 45 in-custody deaths between 2022 and 2024.[8]

96.     In its June 13, 2024 report, the DOJ also found that the Phoenix Police Department delays medical aid to incapacitated suspects.[9]

97.     One particular incident cited in the DOJ report occurred on December 28, 2020, wherein Phoenix Police Department officers shot a woman 10 times and stood by idly for approximately nine minutes before rendering any aid, the woman did not survive her injuries.[10]

98.     Another incident cited by the DOJ occurred on January 11, 2019, Phoenix Police

muhammad-muhaymin.

[7] Melissa Blasius, *Family sues Phoenix Police after 'hogtied' man died*, (Aug. 7, 2021), https://www.abc15.com/news/local-news/investigations/family-sues-phoenix-police-after-hogtied-man-died (last visited Nov. 25, 2025).

[8] *Data Visualization Center: Death in Custody Reporting Act*, Arizona Criminal Justice Commission https://www.azcjc.gov/Data/Deaths-in-Custody (last visited Nov. 23, 2025).

[9] INVESTIGATION OF THE CITY OF PHOENIX AND THE PHOENIX POLICE DEPARTMENT at p. 18.

[10] *Id.* at p. 19, ABC15 Arizona, *Phoenix Police Department delays medical aid*, YouTube (Aug. 14, 2024), https://www.youtube.com/watch?v=9mk56-EpGeo.

Department officers shot nineteen year-old Jacob Harris and waited more than nine minutes to approach and render aid, Mr. Harris did not survive his injuries.[11]

99.    On September 8, 2023, Cassidy Stigler was arrested by the Phoenix Police Department showing signs of medical distress, brought to the hospital for medical treatment, and was found dead in her cell shortly after being transferred to Maricopa County jail.[12]

100.    In November 2024, Defendant City of Phoenix and Maricopa County jointly settled a wrongful death claim arising from the January 1, 2021 in-custody death of Akeem Terrell for $4.8 million. Mr. Terrell was placed in a pre-isolation cell, pinned to the ground by officers and left in the isolation cell. Jail surveillance shows Mr. Terell was clearly unresponsive and motionless, and not checked on for more than 5 minutes.[13]

101.    On January 10, 2025, Turrell Dantae Clay was initially treated on-scene by paramedics following his arrest and released back to Phoenix Police officers, Mr. Clay continued complaining of severe chest pains to officers, but the officers insisted Mr. Clay was fine. Officers eventually transported Mr. Clay to an insufficiently equipped hospital, had to transport him to a cardiac hospital for advanced medical care, where he died during

---

[11] INVESTIGATION OF THE CITY OF PHOENIX AND THE PHOENIX POLICE DEPARTMENT, p. 19, ABC15 Arizona, *Breakout Story: Jacob Harris shooting*, YouTube (July 24, 2024), https://www.youtube.com/watch?v=rns8fh43mUE.

[12] Briana Whitney, *Transparency concerns of Phoenix Police after in-custody death*, (Dec. 7, 2023), https://www.azfamily.com/2023/12/07/transparency-concerns-phoenix-police-after-in-custody-death/ (last visited Nov. 25, 2025).

[13] Dave Biscobing, *Maricopa County approves massive settlement for in-custody death*, (Nov. 19 2024), https://www.abc15.com/news/local-news/investigations/maricopa-county-set-to-approve-massive-settlement-for-in-custody-death (last visited Nov. 25, 2025)

a surgical procedure.[14]

102.    Defendants City of Phoenix's actual or constructive knowledge of the above facts and subsequent failures to implement procedural safeguards demonstrates deliberate indifference to a pretrial detainee's right to adequate medical care under the Fourteenth Amendment.

103.    Defendant City of Phoenix's deliberate indifference to the know or obvious consequences caused by its inadequate policy or customs, and its failure to remedy the same was the driving force behind bringing about injury to Decedent's Fourteenth Amendment right to adequate medical care as a pretrial detainee.

104.    Defendant City of Phoenix's policy, pattern of practice, or custom of condoned misconduct is tacitly of overtly ratified by its failure to train and supervise Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan involved at all relevant times hereto and amounted to deliberate indifference towards Decedent's right to adequate medical care.

105.    Defendant City of Phoenix's ratified policy, pattern of practice, or established custom was the driving force behind the violation of Decedent's Fourteenth Amendment right to adequate medical treatment.

106.    As a direct and proximate cause of Defendant City of Phoenix's deliberate indifference, Decedent suffered damages in an amount to be proven at trial.

107.    Plaintiff reserves the right to alleges additional facts as a basis for Count IV.

---

[14] Elena Santa Cruz, *Death of man shot by Phoenix police with less-lethal weapon ruled homicide*, (May 13, 2025), https://www.azcentral.com/story/news/local/phoenix-breaking/2025/05/13/homicide-ruling-man-shot-killed-less-lethal-ammo-phoenix-police/83587130007/ (last visited Nov. 25, 2025).

**COUNT V**

**(Violation of Civil Rights 42 U.S.C. § 1983)**
**(Plaintiff's Fourteenth Amendment Right to Decedent's Companionship)**
**(Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan)**

108.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

109.    Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan violated Plaintiff's rights pursuant to the Fourteenth Amendment of the United States Constitution.

110.    The Fourteenth Amendment protects a parent's liberty interest in the companionship of their adult children. *Sinclair v. City of Seattle*, 61 F.4th 674, 678-79 (9th Cir. 2018), *cert. denied*, 114 S. Ct.. 88 (2023).

111.    Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan's deliberate indifference towards Decedent's right to adequate medical care demonstrated conduct that shocks the conscious and deprived Plaintiff of her liberty interest in Decedent's continued companionship.

112.    Plaintiff and Decedent shared more that a mere biological relationship, Plaintiff and Decedent lived together, enjoyed their companionship, and mutually supported one another.

113.    Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan are liable both personally and professionally for violating Plaintiff's Fourteenth Amendment right pursuant to 42 U.S.C. § 1983.

114.    Defendants Hamernick, Tennyson, Carro, Farris, and Buchanan's actions directly and proximately caused injury to Plaintiff's Fourteenth Amendment right.

115.   Plaintiff reserves the right to allege additional facts as a basis for Count V.

**COUNT VI**

**(Violation of Civil Rights 42 U.S.C. § 1983)**
**(Plaintiff's Fourteenth Amendment Right to Decedent's Companionship)**
**(Defendant City of Phoenix)**

116.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

117.   Upon information and belief, at all relevant times hereto, Defendant City of Phoenix had a policy or widespread practice or custom in place depriving individuals of adequate medical care.

118.   Defendant City of Phoenix's actual or constructive knowledge of the policy or widespread practice or custom and subsequent failures to implement procedural safeguards demonstrates deliberate indifference towards Plaintiff's Fourteenth Amendment protected liberty interest in Decedent's continued companionship.

119.   Defendant City of Phoenix's ratified policy, pattern of practice, or established custom was the driving force behind the deprivation of Plaintiff's Fourteenth Amendment protected liberty interest.

120.   As a direct and proximate cause of Defendant City of Phoenix's deliberate indifference, Plaintiff was damaged in an amount to be proved at trial.

121.   Plaintiff reserves the right to allege additional facts as a basis for Count VI.

**DEMAND FOR JURY TRIAL**

122.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

24

demands a trial by jury.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, for such sum of money within the jurisdiction of the Court and for full and complete compensation for general and special damages together with punitive damages, for their attorney fees and costs where applicable, for the losses Plaintiff and Decedent sustained in this matter and for such other and further relief available to them under 42 U.S.C. § 1983 and Arizona state law, and any further relief as the Court or jury deems just and proper.

**Respectfully submitted** this 26th day of November, 2025

**SLATON ROEBUCK, PLLC**


By:/s/ Sandra Slaton
    Sandra Slaton, Esq.
    *Attorney for Plaintiff*

## VERIFICATION

STATE OF ARIZONA          )
                          )ss.
County of Maricopa        )

Mary Louise Hurd, being first duly sworn upon her oath, deposes and says:

I, Mary Louise Hurd, under penalty of perjury have read the foregoing Complaint and know the content and facts therein to be true and correct, except where they were alleged upon information and belief, and as to those facts and allegations, I believe them to be true to the best of my knowledge.

Mary Louise Hurd

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 24th day of November, 2025 by Mary Louise Hurd.

Notary Public

My Commission Expires:

9/21/28

CATHY ANN BOPP
Notary Public - Arizona
Maricopa County
Commission # 674624
My Comm. Expires Sep 21, 2028